IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE NORTHEAST OHIO COALITION FOR THE HOMELESS, *et al.*, | : : : | Case No. 2:06-CV-00896 Case |
| Plaintiffs, | : : | JUDGE ALGENON L. MARBLEY |
| v. | : : | Magistrate Judge Kemp |
| JON HUSTED, in his official capacity as Secretary of the State of Ohio, | : : : | |
| Defendant, | : : | |
| and | : : | |
| STATE OF OHIO | : : | |
| Intervenor-Defendant; | : : : | |
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1, *et al.*, | : : : | Case No. 2:12-CV-00562 |
| Plaintiffs, | : : | JUDGE ALGENON L. MARBLEY |
| v. | : : | Magistrate Judge Kemp |
| JON HUSTED, *et al.*, | : : | |
| Defendants. | : : | |

## **ORDER**

This matter is before the Court on Plaintiffs' Bill of Costs, (Doc. 428), filed in compliance with this Court's Opinion and Order granting with modification Plaintiffs' several motions for attorneys' fees, (Doc. 388; Doc. 393; *SEIU v. Husted*, No. 2:12-CV-00562, Doc. 120), seeking fees and costs related to the Consent Decree put in place on April 19, 2010 by the parties to resolve the case (Doc. 210).

## I.  BACKGROUND

For purposes of this Order, the Court need not describe the complex substance of this case at length. In brief, the Northeast Ohio Coalition for the Homeless ("NEOCH") Plaintiffs initiated their action in 2006, challenging various then-new provisions of the Ohio Revised Code related to voter identification. (*See Compl.*, Doc. 2). On April 19, 2010, the Court entered a Consent Decree resolving Plaintiffs' challenges. The Decree mandated that the Secretary of State instruct the Ohio Board of Elections to adhere to certain rules regarding "the casting and counting of provisional ballots for persons without identification other than a social security number," including, for example, preventing county elections boards from rejecting certain provisional ballots on the grounds that the voter did not present identification, provide a date of birth, provide an address, cast his vote in the right location but using the wrong precinct ballot, etc. (*Consent Decree*, Doc. 210 at 3).

Throughout 2012, the NEOCH Plaintiffs undertook various actions in this Court in order to defend the Decree. First, on April 26, 2012, members of the Ohio Legislature filed a writ of mandamus in the Ohio Supreme Court seeking a declaration that the Decree was inconsistent with Ohio law. (Doc. 246-1). On May 8, 2012, NEOCH Plaintiffs moved this Court for an injunction to prohibit the legislators from attacking the decree in state court. (Doc. 246). The Court granted Plaintiffs' motion on May 11, 2012, and the legislators dismissed their suit in the Ohio Supreme Court. (Doc. 260). The Court's written Order held that the requested relief was warranted given the extraordinary act of collaterally attacking the Decree. (Doc. 261).

Second, in the wake of the legislators collateral attack, on May 17, 2012, the Court ordered simultaneous briefing "on the threshold issue of the legal validity of the Consent

2

Decree," with oral argument to follow.  (Doc. 264).  On July 9, 2012, NEOCH Plaintiffs were successful in defending the validity of the Decree.  (*See* Doc. 307).

While the challenge to the validity of the Decree was pending, Plaintiffs filed their own motion to modify the Decree to prevent further alleged constitutional violations.  (Doc. 288).  At the same time, on June 22, 2012, the Service Employees International Union ("SEIU") Plaintiffs filed their action, also seeking to invalidate various Ohio voter-ID laws, with particular focus on ballots that would be rejected because poll workers erroneously provided the voter with a precinct ballot that did not correspond to the voter's assigned precinct.  (*SEIU v. Husted*, *Compl.*, Doc. 1).  Based on the similar nature of these two cases, and the parallel relief sought, the Court ordered that the two cases were related, on June 26, 2012 (Doc. 302), and the Court heard joint arguments on NEOCH Plaintiffs' motion to modify (Doc. 288) and SEIU Plaintiffs' motion for preliminary injunction (*SEIU v. Husted*, Doc. 4).  (*See Joint Scheduling Order*, Doc. 308).

On August 27, 2012, the Court issued a preliminary injunction in *SEIU v. Husted*, and ordered the Secretary to direct county boards of elections to count all wrong-precinct provisional ballots absent evidence that the poll worker properly performed his or her duties, and to count all provisional ballots with technical errors in the ballot envelope.  (*SEIU v. Husted*, Doc. 67).  Because this order "grant[ed] the same equitable relief requested by [NEOCH Plaintiffs'] Motion to Modify," the Court stayed that motion as moot, subject to renewal if warranted.  (Doc. 332).

Defendants appealed the July 9, 2012 denial of the motion to vacate, as well as the preliminary injunction in *SEIU v. Husted*.  (Doc. 319; *SEIU v. Husted*, Doc. 71).  Argument was held October 1, 2012, and on October 11, 2012, the Sixth Circuit issued a published opinion affirming this Court's denial of Defendants' request to vacate the Decree, and affirming in part and reversing in part the preliminary injunction.  (Doc. 336; *SEIU v. Husted*, Doc. 82).

On July 1, 2013, SEIU Plaintiffs filed a motion for partial summary judgment and permanent injunction, asking the Court to make permanent the preliminary injunction requiring the counting of correct-location/wrong-precinct ballots. (*SEIU v. Husted*, Doc. 107). Defendants did not contest the remedy, though they took issue with what they considered to be mischaracterizations and false allegations by SEIU Plaintiffs. (*SEIU v. Husted*, Doc. 110). On July 9, 2013, the Court granted summary judgment and issued a permanent injunction. (*SEIU v. Husted*, Doc. 112).

The NEOCH Consent Decree was set to expire by its own terms on June 30, 2013. According to NEOCH Plaintiffs, in anticipation of this expiration date, negotiations began to extend the degree by joint consent. (Doc. 388 at 9). Those efforts proved futile, however, and on June 10, 2013, Plaintiffs moved to extend the Decree. (Doc. 362). Plaintiffs initially sought an indefinite extension (*see* Doc. 362 at 28), but later, in the alternative, sought an extension for two presidential election cycles—that is, eight years (*see* Doc. 373 at 22). After oral argument, the Court granted Plaintiffs' Motion, but opted to extend the Decree for only one election cycle, until December 31, 2016. (Doc. 383).

On October 21, 2013 and December 12, 2013, respectively, NEOCH Plaintiffs moved for attorney's fees and costs related to their successful 2013 extension of the Decree (Doc. 388), as well as their various efforts in 2012 defending the Decree in this Court and on appeal (Doc. 393). SEIU Plaintiffs requested fees and costs flowing from their successful preliminary injunction, its defense on appeal, and the subsequent permanent injunction. (*SEIU v. Husted*, Doc. 120). Generally, Defendants did not dispute that Plaintiffs are prevailing parties under 42 U.S.C. § 1988, but challenged the fee rates requested by Plaintiffs, and the reasonableness of the hours allegedly expended.

4

On September 29, 2014, this Court issued its Opinion and Order granting with modifications Plaintiffs' several motions for fees. (*Opinion and Order*, Doc. 426). In its Opinion and Order, the Court instructed Plaintiffs to submit to the Court, within 30 days of the Order, a Bill of Costs, together with supporting documentation, reflecting the hours the Court has approved, including those omissions and reductions made voluntarily by Plaintiffs, as well as those ordered by the Court, billed at the hourly rates the Court set forth above, and including "fees for fees" for no more than 3% of the total merit hours in the two cases combined. On October 29, 2014, Plaintiffs submitted a Bill of Costs and supporting documentation as instructed.

## II.     ANALYSIS
### A. Modifications to Plaintiffs' Requests for Fees and Expenses

In the Court's September 29, 2014 Opinion and Order, the Court made the following modifications to the Plaintiffs' requests for fees and expenses:

**1. Mediation** (2013 NEOCH Plaintiffs): Plaintiffs requested for fees related to mediation and negotiations conducted at the Sixth Circuit. The Court found the fees related to mediation to be proper, but also noted that, to the extent Plaintiffs overbilled for this time, they agreed to reduce their hours by 0.5 hours. (Doc. 394 at 39). Plaintiffs withdrew 0.5 hours for fees related to mediation and negotiations in the prior to the submission of the final Bill of Costs. (*see* Doc. 394 at 46; *see also* Doc. 395 at 2). Thus, Plaintiffs are in compliance with the Court's Opinion and Order on this issue.

**2. Travel** (All Plaintiffs): Plaintiffs requested fees for travel to and from the Court for various arguments. The Court found these fees to be reasonable and proper, and thus made no modifications to the Plaintiffs' travel fees request. (Doc. 426).

**3. Clerical Work** (All Plaintiffs):  The Court found Plaintiffs' fees and expenses for clerical work to be proper with the notation that Plaintiffs agreed to withdraw 2.6 hours of work done by Attorney McTigue.  (Doc. 409 at 54).

Plaintiffs Bill of Costs deducts 2.6 hours for the work done by Attorney McTigue and recalculates the total number of hours sought for merits work in *SEIU Local 1* (Doc. 120) and *NEOCH* (Doc. 393) in accordance with the Court's Opinion and Order on this issue.  (Doc. 428 at 2).

**4. Fees for Fees** (All Plaintiffs):  Plaintiffs requested so-called "fees for fees," for work done in preparing the various motions for attorneys' fees and costs for their 2012 work.[1]  The Court found that the 3% "fees for fees" award should be applied to the total merit hours in the two cases combined, to reflect their interrelatedness.

Plaintiffs calculated the total number of merit hours in the two cases combined, accounting for the Court's modifications in its Opinion and Order, as 5,641.21 hours.  Plaintiffs then calculated 3% of that total as 169.24 and thus seek a "fees for fees" award for 169.24 hours of work.  (Doc. 428 at 3).  This analysis and calculation is in accordance with the Court's Opinion and Order on this issue.  (Doc. 426 at 12-13).

**5. Unsuccessful Claims** (All Plaintiffs):  Plaintiffs requested fees for various claims and arguments which Defendants characterized as unsuccessful, including a permanent injunction sought by the SEIU Plaintiffs in *SEIU v. Husted*; a motion to certify a defendant class of all of Ohio's 88 boards of elections sought by the SEIU Plaintiffs; a motion to modify that was ultimately held to be moot filed in the NEOCH case by the 2012 NEOCH Plaintiffs; and the

---

[1] NEOCH Plaintiffs opted to defer until a later request their "fees for fees" for Attorneys Gentry and McTigue related to the fee motion for their 2013 work.  (Doc. 394 at 44).  Plaintiffs have deducted those hours from the 2013-related Motion.  (*Id.* at 45).

2012 NEOCH Plaintiffs' motion to hold in contempt the relator-legislators who filed for mandamus in the Ohio Supreme Court.  The Court was satisfied, however, that no unwarranted fees were included in Plaintiffs' requests, other than those addressed earlier in the Opinion and Order, and other than those which Plaintiffs had already voluntarily removed:  fees reflected in Defendants' Exhibit 6 (Doc. 407-7); and 21.1 attorney hours and paralegal hours spent on briefing the ballot affirmation issue on appeal, as reflected in some entries in Defendants' Exhibit 7 (Doc. 407-18).  (*See* Doc. 409 at 56-57).

As Plaintiffs indicated to the Court, their Bill of Costs recalculates their fees requests, deducting the aforementioned 21.1 hours and the fees reflected in Defendants' Exhibit 6 (Doc 407-7), amounting to 57.97 hours.  (Doc. 428 at 2).  Thus, Plaintiffs are in compliance with the Court's Opinion and Order on this issue.  (Doc 426 at 13-14).

**6. Work related to the Intervenor Voters** (SEIU Plaintiffs):  Plaintiffs sought an award of fees for approximately 40 hours of work related to the group of individual voters who sought to intervene at both the trial and appellate levels in the SEIU case.  (Doc. 407 at 63).  The Court found that 35.9 hours should be omitted from the award of fees.  (*See* Doc. 409 at 66 & n.14).

In compliance with this Court's order, Plaintiffs' properly deducted 35.9 hours for work related to intervenor voters in their Bill of Costs.  (Doc. 428 at 2).

### B.  Reasonable Hourly Rate

The Court also established reasonable hourly rates for each of the attorneys involved in the cases at issue for whom Plaintiffs requested fees.  After a review of the customary rates of Plaintiffs' counsel, their training, background, skill, and experience, as well as fee awards in analogous cases, and the Court's own knowledge and experience, the Court concluded that the following rates are reasonable and reflect the prevailing market rate for lawyers of comparable skill and experience:

7

| Firm | Attorney | Rate ($/hr) |
|---|---|---|
| Altshuler Berzon LLP | Stephen P. Berzon | 600 |
| | Jonathan Weissglass | 550 |
| | Stacey M. Leyton | 475 |
| | Danielle E. Leonard | 450 |
| | Peder Thoreen | 450 |
| | Barbara J. Chisholm | 450 |
| | Caroline Cincotta | 320 |
| | Diana Reddy | 305 |
| | Matthew Murray | 290 |
| | Law Clerks | 150 |
| | Paralegals | 135 |
| Chandra Law Firm | Subodh Chandra | 425 |
| | Ashlie Case Sletvold | 350 |
| | Sandhya Gupta | 300 |
| | Paralegals | 120 |
| McTigue & McGinnis | Donald McTigue | 450 |
| | J. Corey Colombo | 360 |
| | Mark A. McGinnis | 360 |
| Porter, Wright, Morris & Arthur | Kathleen Trafford | 445 |
| | Caroline Gentry | 350 |
| | L. Bradford Hughes | 335 |
| | Eric Gallon | 335 |
| | Daniel Miller | 275 |
| | Jared Klaus | 215 |
| | Law Clerks | 125 |
| | Paralegals, support | 125 |
| Hunter, Carnahan, Shoub, Byard & Harshman | Michael J. Hunter | 450 |
| | Cathrine Harshman | 300 |
| Advancement Project | Donita Judge | 375 |

Plaintiffs properly recalculated the fees requested in the Bill of Costs using the rates determined to be reasonably by this Court. (Doc. 428-1). Thus, Plaintiffs are in compliance with the Court's Opinion and Order on this matter as well.[2]

---

[2] In its Bill of Costs, Plaintiffs included fees and an hourly rate for attorney Laura Trice and for a position listed only as "Case Assistant," although the Court's Opinion and Order did not set specific rates for these two positions. (Doc. 428). Both were included in Exhibit 3 attached to Plaintiffs initial motion for attorney's fees in *SEIU v. Husted*, but were not mentioned in the substantive briefing. (Doc. 120; Doc. 120-3). Attorney Stacey Leyton later detailed Laura Trice's education, qualifications, experience, and market rate in her affidavit attached to Plaintiffs' reply

### C. Reasonableness of the Lodestar Calculation

The Court concluded the lodestar calculation represents a fair and reasonable award for Plaintiffs. (Doc. 428). Plaintiffs' Bill of Costs appropriately applies the lodestar calculation. (Doc. 426).

### D. Costs and Expenses

Plaintiffs also sought reimbursement for the litigation expenses undertaken in the prosecution of these actions. After review of the costs and expenses submitted by Plaintiffs, and in light of the Court's finding that nearly all of Plaintiffs' hours of attorney work are reasonable, the Court concluded that Plaintiffs' requested costs are appropriate, with the exception of any costs associated with the 35.9 hours of attorney work related to the intervenor-voters.

Plaintiffs accounted for costs and expenses related to the 35.9 hours of work related to the intervenor-voters by deducting $357.52 from its expenses request for the work done by Altshuler Berzon LLP. (Doc. 428-1 at 3). Plaintiffs' adjustment is in compliance with this Court's Opinion and Order.[3]

### III. CONCLUSION

Having reviewed Plaintiffs Bill of Costs and supporting documentation, this Court approves awards of **$2,112,052.69**[4] for Plaintiffs' 2012 fees and expenses and **$115,127.21** for Plaintiffs' 2013 fees and expenses, which are in accordance with this Court's September 29,

---

briefing. In their Bill of Costs, Plaintiffs discounted Laura Trice's hourly rate by the largest discount this Court applied to any attorney for whom fees were sought – 20%. Similarly, Plaintiffs discounted the hourly rate for the "Case Assistant" position by the same amount this Court discounted the rates for paralegals – 30%. This Court approves the methodology utilized by the Plaintiffs as consistent and in accordance with the Court's Opinion and Order and finds the addition of these fees to the lodestar calculation to be reasonable.

[3] In the Bill of Costs, Plaintiffs inform the Court that Plaintiffs' Reply brief calculated Altshuler Berzon LLP's 2012 expenses based on an incorrect figure ($1,559.49). (Doc. 428-1 at 3). Plaintiffs assert that the correct amount of expenses is $2,154.10, as stated in "Exhibit D to the Leyton declaration (SEIU Local 1, Doc. 133-4)." (*Id*). Accordingly, Plaintiffs attempt to recalculate their total expenses using the correct amount of Altshuler Berzon's 2012 expenses, while also deducting the $352.52 in expenses for work related to intervenor-voters as ordered by this Court. Unfortunately, Plaintiffs incorrectly calculated the final adjusted total for the Altshuler Berzon 2012 expenses (in both the Altshuler Berzon LLP exhibit, (Doc. 428-1 at 3), and in the Bill of Costs 2012 summary chart, (Doc. 428 at 3)). The correct adjusted total for Altshuler Berzon LLP's 2012 costs and expenses is $67,712.70.

[4] This total adjusts for the miscalculation of Altshuler Berzon's 2012 costs and expenses detailed in Footnote 3 of this Opinion and Order, *supra*.

2014 Opinion and Order (Doc. 426).  For this reason, the Court **APPROVES** Plaintiffs' Bill of Costs (Doc. 431).  The Court hereby **ORDERS** a total award in the amount of **$2,227,179.90** in attorney fees and costs to Plaintiffs.

    **IT IS SO ORDERED.**

                                                        *s/ Algenon L. Marbley*
                                                       **ALGENON L. MARBLEY**
                                                       **UNITED STATES DISTRICT JUDGE**

**DATED:  February 17, 2015**